**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| **RONNIE DE LA FOSSE** | **CIVIL ACTION NO. 05-1009** |
| **VS.** | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

**REPORT AND RECOMMENDATION**

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

***Background***

Born on April 14, 1961, Ronnie De La Fosse is a 46-year-old claimant with a high school education. (Tr. 597, 599). De La Fosse has worked in the past as a butcher, welder, and operations manager. (Tr. 599-601).

On August 31, 2001, De La Fosse protectively filed an application for disability insurance benefits, alleging disability as of May 21, 2001 due to a heart condition, back problems, and stress/depression/anxiety. (Tr. 141). De La Fosse's application was denied initially and on reconsideration, and an administrative hearing was held before an administrative law judge on January 21, 2004, at which a vocational expert ("VE") testified. (Tr. 594-621). On February 19, 2004, the ALJ issued an unfavorable decision. (Tr. 36-48). The Appeals Council granted review on June 25, 2004 and remanded the case back to the ALJ for further administrative action on the following grounds: (1) the ALJ found that De La Fosse had a mental impairment but failed to conduct an evaluation of the impairment's severity or its effects pursuant to 20 C.F.R.

§404.1520a; and (2) the ALJ failed to evaluate the opinions of several treating and examining sources. (Tr. 97-98).

Following a second administrative hearing on September 24, 2004, (Tr. 574-93), the ALJ issued an unfavorable decision on November 18, 2004. (Tr. 15-27). The Appeals Council denied review on April 12, 2005, making the ALJ's decision the final decision of the Commissioner from which De La Fosse now appeals. (Tr. 8-10).

***Assignment of Errors***

De La Fosse raises three errors on appeal[1]: (1) The ALJ erred in concluding that De La Fosse's mental impairment is not disabling; (2) the ALJ failed to give proper weight to the opinions of Dr. Turner and Dr. Dupre; and (3) the ALJ failed to include all of De La Fosse's limitations in his hypothetical questions posed to the vocational expert, and therefore improperly relied on the testimony of the VE in concluding that De La Fosse can perform the jobs of office clerk or assembler and that these jobs exist in significant numbers in the national economy.

***Standard of Review***

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292;

---

[1] De La Fosse actually advances five assignments of error, but several of these have been combined for the purposes of this ruling.

Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

***Analysis***

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 5 that De La Fosse suffers from the severe impairments of coronary artery disease, degenerative disc disease, a depressive disorder, and a panic disorder, but that he nevertheless retains the residual functional capacity to perform a modified range of light work. (Tr. 25-26). The ALJ relied upon the testimony of the VE at the

first hearing, and used the Medical-Vocational Guidelines as a framework for decision-making. He concluded that De La Fosse can perform a number of jobs in the national and local economies and was, therefore, not disabled.

After careful consideration of the record, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.

**1. Medical History**

De La Fosse suffers from a variety of physical and mental impairments, as discussed below:

***Coronary Artery Disease***

De La Fosse has been treated for coronary artery disease by the cardiology group at Coastal Cardiology since 1997, when it was discovered that he had a right bundle-branch block. (Tr. 361). An echo cardiography was normal at that time. (Tr. 260). On August 12, 1999, De La Fosse experienced pain in his left chest that radiated to this left shoulder and down his left arm. (Tr. 208). He was admitted to a hospital, where a heart attack was diagnosed. Admission notes at that time indicate that a stent had been placed two years earlier. (Tr. 213).

De La Fosse had another heart attack on May 21, 2001 and was admitted to the hospital for one week for emergent left heart catheterization and placement of another stent. (Tr. 213). On July 24, 2001, after continued chest pain, De La Fosse was re-admitted to the hospital for recatheterization with coronary angiogram and bypass graft. (Tr. 313-16).

On September 21, 2001, Dr. Stephen A. Turner, a cardiologist, completed a residual functional capacity assessment for cardiac patients, wherein Dr. Turner diagnosed De La Fosse with anterior wall myocardial infarcation cardiovascular disease. (Tr. 373). Dr. Turner described

De La Fosse's symptoms as chest pain, shortness of breath, fatigue, weakness, and sweatiness. (Id.). Dr. Turner reported that De La Fosse's heart functions at 50% normal capacity, and he further stated that De La Fosse experiences emotional factors that contribute to his subjective symptoms and limitations. (Tr. 374). Dr. Turner reported that De La Fosse's symptoms were severe enough to interfere with his attention and concentration, and he described the side effects of De La Fosse's medications as dizziness, drowsiness, lethargy, and stomach upset. (Tr. 374-75).

Dr. Turner opined that De La Fosse can walk one city block before onset of severe pain; can work up to three hours sitting with a need to alternate positions at will; can never lift 20 lbs. or more; will have good days and bad days; and would likely be absent from work more than three times per month. (Tr. 376).

Records from the Cardiovascular Institute of the South dated March 2002 show that an EKG showed mild mitral regurgitation, left atrial enlargement, and anterior apical hypokenis with an estimated ejection fraction of 55-60%.[2] (Tr. 492). On March 1, 2002, a nuclear study showed antero-apical scar with a calculated ejection fraction of 39%. (Tr. 490). In November 2002, an EKG was abnormal. (Tr. 482). During this period, De La Fosse complained of chest pain, fatigue, and dizziness. (Tr. 494, 486).

---

[2] Ejection fraction (EF) is a measurement of the heart's ability to pump blood. It is a key indicator of heart health and is frequently used by physicians to determine how well your heart is functioning as a pump. The volume of blood pumped out by your left ventricle per beat is called ejection fraction. *A normal EF is 50 percent or higher. Ejection fraction is also a key indicator of risk for sudden cardiac arrest. An EF of 40 percent or less indicates a weakened heart muscle. Anyone with an EF of 40 or below could be at risk for dangerously fast heart rhythms that lead to sudden cardiac arrest and has a greater chance to survive if they receive an implantable cardioverter defibrillator (ICD).* Your physician may use your EF in determining your treatment options. EF is usually measured using an echocardiogram. (emphasis added). See health and wellness website Medtronic, http://www.medtronic.com/ef/faq.html.

***Mental Impairments***

De la Fosse has been treated for depression and anxiety since approximately 1999. That year, Dr. Shatha M. Olofsson, a psychiatrist, diagnosed De La Fosse with major depressive disorder and generalized anxiety disorder. (Tr. 405-10). De La Fosse has consistently sought treatment for his mental impairments every other month since that time. Between that time and April 2001, De La Fosse was treated with Paxil and Klonopin and reported doing very well on these medications. (Tr. 397-404). In April 2001, however, De La Fosse's depression increased, his sleep was poor, and his anxiety level was high. (Trt. 396). Paxil was decreased, but Wellbutrin was added. In August 2001, De La Fosse was not sleeping, and his anxiety/panic disorder was severe, although his depression had decreased. (Tr. 391). Dr. Olofsson recommended that De La Fosse apply for disability. Also that month, Dr. Olofsson reported that De La Fosse's panic attacks had stopped on Valium, (Tr. 389), but that he was still having chest pain. (Tr. 389).

In September 2001, Dr. Olofsson diagnosed De La Fosse with major depression and panic disorder and listed his symptoms as follows: sleep disturbance; social withdrawal; recurrent panic attacks; emotional liability; mood disturbance; decreased energy; psychomotor retardation; feelings of guilt and worthlessness; difficulty thinking or concentrating; generalized persistent anxiety and irritability; sadness; feeling useless; fear of dying; guilt; and insomnia. (Tr. 368-69). Dr. Olofsson further stated that De La Fosse's side effects due to medication included dizziness, drowsiness, fatigue, lethargy, and stomach upset. (Tr. 370). Dr. Olofsson reported that, because of his anxiety, De La Fosse's chest pain was worse, and he stated that De La Fosse's condition would cause absence from work at least two days per week. (Tr. 370). Dr. Olofsson reported

that De La Fosse has “marked” limitations in the areas of “activities of daily living” and “maintaining social functioning,” “often” has deficiencies in concentration, persistence, and pace resulting in failure to complete tasks in a timely manner, and has had “repeated” episodes of decompensation. (Tr. 371).

In November 2001, De La Fosse reported that he was still getting panic attacks, but was sleeping well. (Tr. 385). In December 2001, De La Fosse was still feeling anxious and uneasy about his future. (Tr. 380).

On February 12, 2002, De La Fosse underwent a consultative psychiatric exam conducted by Dr. Karen L. Kinney, a psychiatrist. On examination, Dr. Kinney reported that De La Fosse had psychomotor agitation at times in his leg, in that it was shaking during the examination; affect was mostly restricted; mood was mildly dysphoric; thought processes were goal-directed and there was no looseness of association; there were no auditory or visual hallucinations; and De La Fosse was oriented to person and place. Dr. Kinney reported that De La Fosse was being treated with a variety of medications to control his depression, anxiety, and insomnia, including Wellbutrin, Valium, Remeron, Trazadone, and Vistaril. (Tr. 43). Dr. Kinney diagnosed De La Fosse with panic disorder without agoraphobia with severe psychosocial stressors that include financial difficulties, unemployment, and medical problems. (Id.).

***Back Condition***

De La Fosse has a history of back pain and has had two surgeries in connection with his back impairments. On July 14, 1997, De La Fosse underwent a left L4-5 laminectomy with partial medial L4-5 facectomy; an L4 ennulotomy and discectomy; a left L5-S1 laminotomy with removal of extruded disc fragments; a partial left L5-S1 medical factectomy; and a L5

annulotomy and discectomy. (Tr. 192-95). Follow up care one month later showed excellent results with no further radicular complaints. (Tr. 200).

After experiencing an increase in back pain, in March 2002, De La Fosse began treatment with Dr. Michael Dupre, a general physician, who reported significant weakness in both of De La Fosse's lower extremities, as well as foot drop. (Tr. 546-47). Dr. Dupre ordered an MRI of the spine, which was conducted on March 26, 2002 and showed evidence of mild scarring along the L4-5 level and tiny disc protrusion at the left paracentral location at L5-S1, without gross evidence of nerve root involvement. (Tr. 543). Dr. Dupre referred De La Fosse to Dr. Alan Appley, a neurosurgeon, who performed left L4-5 and L5-S1 exploratory surgery and microdiskectomy surgery on May 21, 2002. (Tr. 443-48). Following surgery, in December 2002, Dr. Appley reported that in an 8-hour workday, De La Fosse can sit for two hours and stand or walk for just one hour. (Tr. 496). Dr. Appley further reported that De La Fosse would need to alternate sitting and standing at will and should never lift 11-20 lbs. and should only occasionally lift 6-10 lbs. (Tr. 496-97).

In April 2003, De La Fosse returned to Dr. Dupre complaining of increasing back pain with numbness in his left scrotum, as well as numbness and burning in his left leg down to his heel. (Tr. 528). Dr. Dupre referred De La Fosse to Dr. Ted Gillespie, a pain management specialist, who treated De La Fosse in April, May, and November 2003 with prescription pain medication, including Lortab and Narco. (Tr. 565-67, 569-72).

**2.    Issue One: Mental Impairments**

De La Fosse argues that the ALJ erred in concluding that his mental impairment is not disabling. The Commissioner utilizes a corollary sequential procedure for determining the merits

of mental disability claims. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether mental impairments are severe, and also provides detailed guidelines for making Step 3 determinations as to whether mental impairments meet or exceed severity of mental impairments contained in the Listings, as follows:

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004),[3] citing 20 C.F.R. §404.1520a(b)(1).

2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(b)(2). To perform this latter step, the ALJ should assess the claimant's degree of functional limitation in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation.[4] See C.F.R. §404.1520a(c)(3). If the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.

---

[3] The undersigned was unable to find any Fifth Circuit cases setting forth the proper procedure for analyzing mental disability claims since the revisions and amendments to 20 C.F.R. §404.1520a in 2000. The revisions and amendments became effective on September 20, 2000. 65 Fed. Reg. 50,746 (August 21, 2000). See Boyd v. Apfel, 239 F.3d 698, 705 n.11 (5th Cir. 2001). The Serrano-Diaz decision is therefore cited as the most succinct summary of the current law that the undersigned was able to find during research for this report and recommendation.

[4] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 CFR Pt. 404, Subpt. P, App. 1

Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(2) (2002).

4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(3) (2002).

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities*. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

In the instant case, the ALJ applied the proper mental impairment analysis mandated by the Regulations. However, his findings are not supported by the medical records. The ALJ found that De La Fosse has "mild" limitations in the area of "activities of daily living" and "maintaining social functioning," "moderate" limitations in the area of "maintaining concentration, persistence and pace," and no episodes of decompensation. (Tr. 19). The ALJ does not indicate the medical evidence upon which he relied in making these findings.

As noted above, the medical record does not support the ALJ's conclusions. In September 2001, Dr. Olofsson diagnosed De La Fosse with major depression and panic disorder and listed his symptoms as follows: sleep disturbance; social withdrawal; recurrent panic attacks; emotional liability; mood disturbance; decreased energy; psychomotor retardation; feelings of guilt and worthlessness; difficulty thinking or concentrating; generalized persistent anxiety and irritability; sadness; feeling useless, fear of dying guilt; and insomnia. (Tr. 368-69). Dr. Olofsson reported that, because of his anxiety, De La Fosse's chest pain was worse, and he stated

that De La Fosse's condition would cause absence from work at least two days per week. (Tr. 370). Dr. Olofsson reported that De La Fosse has "marked" limitations in the areas of "activities of daily living," "maintaining social functioning,"often has deficiencies in concentration, persistence, and pace resulting in failure to complete tasks in a timely manner, and has had "repeated" episodes of decompensation. (Tr. 371). Dr. Olofsson also stated that De La Fosse's side effects due to medication included dizziness, drowsiness, fatigue, lethargy, and stomach upset. (Tr. 370).

The opinions of Dr. Olofsson, who is De La Fosse's treating psychiatrist, are uncontroverted. Indeed, Dr. Olofsson's medical opinions are consistent with those of Dr. Turner, who reported that De La Fosse experiences emotional factors that contribute to his subjective symptoms and limitations, and that these symptoms are severe enough to interfere with De La Fosse's attention and concentration. (Tr. 374-75). The record also shows that Dr. Olofsson has treated De La Fosse since 1999, and that he has consistently prescribed a variety of antidepressants and other anti-anxiety medications, including Wellbutrin, Valium and Trazadone, during that time period to treat De La Fosse's mental impairments. Finally, Dr. Kinney, the consultative examiner, diagnosed De La Fosse with panic disorder with severe psychosocial stressors, including financial difficulties, unemployment, and medical problems. (Tr. 431).

The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000), citing Leggett v. Chater, 67 F.3d 558, 566 (5th Cir.1995); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and

severity of a patient's impairment will be given controlling weight *if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence.*" Martinez v. Chater, 64 F.3d 172, 176 (5th Cir.1995), citing 20 C.F.R. §404.1527(d)(2)). Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts only where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. See, e.g., Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999); Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994).

Considering the record as a whole, the undersigned concludes that substantial evidence does not support the ALJ's findings that De La Fosse's limitations in the areas of "activities of daily living" and "maintaining social functioning" are only mild. Rather, the medical evidence shows that De La Fosse's impairments in these areas are at least moderate.

Since De La Fosse has moderate impairments in all three areas of mental functioning, and has had repeated episodes of decompensation, the undersigned concludes that the evidence does not support the ALJ's conclusion that De La Fosse's mental impairments are not disabling.

Because the undersigned concludes that De La Fosse's mental impairments are disabling, it is unnecessary to address the remaining assignments of error.

## ***Conclusion***

Considering the foregoing, it is recommended that the ALJ's decision be **REVERSED** and that De La Fosse should be awarded benefits consistent with an onset date of May 21, 2001.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections

with the Clerk of Court.  Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).  See Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on August 16, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)